## MILLER v. MILLER.

1. MARRIAGE—CONSUMMATION.—An allegation in a complaint for alimony, that plaintiff and defendant were duly married, that plaintiff has done her duty as wife and mother faithfully, is not an allegation of consummation of marriage, or of cohabitation after marriage. And the testimony showing

that immediately after the marriage ceremony in Georgia, the parties separated and have never been together since, and in the absence of any Georgia definition of "consummation of marriage," this court declined to declare that there had been consummation. This term defined.

2. CERTIFICATE—ABBREVIATIONS.—A certificate of marriage in another State signed "Michael Naughtin, J. P. C. Co., Ga.," without further explanation, does not prove a marriage in fact.[1]

3. COPY RECORD OF ANOTHER STATE—RECORDING—MARRIAGE—DURESS.—A copy record of marriage of a non-resident in Georgia, as there recorded is not entitled to be received as a verity by the courts of this State, where the laws of Georgia do not require such marriage certificates to be recorded. And besides, it is a fact in this case that the said ceremony was submitted to by defendant when under duress, and has never been ratified by him.

4. FINDINGS OF FACT by the Circuit Judge, from testimony heard by him, approved.

Before IZLAR, J., Charleston, June, 1893.

. Action by Mary A. Miller, by guardian *ad litem,* against C. D. Miller, for alimony, commenced January 14, 1893.

*Mr. C. S. Bissell,* for appellant.

*Messrs. McCradys & Bacot,* contra.

March 18, 1895. The opinion of the court was delivered by

MR. JUSTICE POPE. The plaintiff, being a minor under the age of twenty-one years, through her father, who was duly appointed her guardian *ad litem,* has instituted this action in the Court of Common Pleas for Charleston County, for alimony. In her complaint she alleges her marriage with the defendant on the 2d day of November, 1892, the birth of an infant, which is still alive, and that the defendant, since said marriage, has neglected the plaintiff and refuses to furnish her means of support, and, also, neglects and refuses to furnish the said infant with the necessaries of life and medical attention; that the plaintiff has discharged faithfully and fully her duty as a wife. In his answer, the defendant, after a denial of the material facts of the complaint, alleges that any supposed contract of marriage between himself and the plaintiff is invalid and void, and

---

[1] See note in 14 L. R. A., at page 815.

that at the time the supposed contract was made, it was not a contract. Whereupon the defendant prays the court to hear and determine any issue herein affecting the validity of any supposed contract for marriage between the defendant and the plaintiff, and to decree any such supposed contract void.

Under an order therefor, duly passed, the testimony was all taken by Master Dingle and reported to the court. The action came on to be heard before his honor, Judge Izlar, who filed a most elaborate decree on the 15th September, 1893. He held as follows: "Under a review of the whole testimony, I find, as a matter of fact: (1) that the defendant Miller was not consenting to this marriage voluntarily, but was forced thereto under duress, and (2) that there was no consummation of the alleged marriage. The decree must, therefore, be against the plaintiff. The defendant, under the provisions of the General Statutes, prays affirmative relief. The provision is as follows: 'Section 2028. The Court of Common Pleas shall have authority to hear and determine any issue affecting the validity of contracts of marriage, and to declare the same void for want of consent of contracting parties, or for any other cause going to show that at the time the supposed contract was made, it was not a contract: *Provided*, That such contract has not been consummated by the parties thereto.' In pursuance of this provision, the defendant in his answer prays, 'that the court will hear and determine any issue herein affecting the validity of any supposed contract of marriage between himself and the plaintiff, and will decree any such supposed contract void, and for his costs, &c.' As we have concluded and adjudged that the defendant was not consenting to the alleged marriage, and that there was no consummation, and that there was not, therefore, a valid marriage contract between the plaintiff and the defendant, and that under the laws of Georgia, where the marriage was alleged to have taken place, the same is void, the defendant is entitled, under the statute, to the relief prayed for. It is, therefore, ordered, adjudged, and decreed, that the complaint in this case be dismissed with costs, and that the alleged contract of marriage therein set forth be, and is hereby, declared void."

The plaintiff now appeals upon four grounds, to wit: 1st. Because his honor erred in holding that there was no allegation in the complaint of any consummation or cohabitation after marriage, the allegation in the complaint, "she has done her duty as wife and mother faithfully, and after her marriage to said defendant, in the city of Savannah, left said city for Charleston at the request of said defendant, and upon express promise from said defendant that he would support and protect her," showing that he recognized and held her out as his wife, if proved, is sufficient to constitute consummation under the Georgia laws. 2d. Because his honor erred in holding that the copy of record of marriage, as introduced in evidence, could not be relied upon as evidence of the marriage, the generally adopted doctrine of the law being that the record, or proper copy thereof, is direct evidence of the marriage in criminal and civil cases alike. 3d. If it is not necessary to record the marriage (the female being a non-resident), then his honor erred in holding that there was no evidence that Michael Naughtin was a justice of the peace, because, according to the defendant's own testimony, that said Michael Naughtin held himself out as an officer in power to perform the marriage ceremony, and representing himself as one who was in the habit of so acting, the law presumes from this that he had the right so to act, and this presumption holds good until the contrary is shown. 4th. Because his honor's finding, that the defendant was not consenting to the marriage voluntarily, but was forced thereto under duress, is contrary to the weight of the evidence and law of presumption as applicable thereto.

Although, in view of our duty under the law to these parties litigant, we have endeavored to study the case as made by their pleadings and testimony, yet we shall dispose of these several questions raised by the appeal in as brief manner as possible. We will not even lay bare the grounds here furnished for the indignation we feel at the foul wrong which has been done to the family of the plaintiff, the cruel deception practiced upon the mother of the plaintiff, in order to render possible the attack upon the plaintiff. Hard, indeed, would be the heart that would fail to respond in generous sympathy to this afflicted

310          MILLER *v.* MILLER.

family.   We make this last remark almost in explanation of the judgment that, under the law, we feel obliged to render. Let us, then, pass upon these grounds of appeal.

*First.* We agree with the Circuit Judge, that there is no allegation of the complaint of any consummation of the marriage contract or cohabitation after marriage.   It seems from the testimony of both parties and their witnesses, that as soon as the alleged marriage ceremony was finished, the plaintiff and defendant immediately separated, and have never been together since.   The marriage occurred in the State of Georgia.   There is no decision of the courts of that State defining the term "consummation."   The meaning accorded in 14 Am. & Eng. Enc. Law, at page 518, to that term, is approved by us, and need not be quoted.

*Third.* It seems the plaintiff endeavored to prove a *fact of marriage* and not a *marriage in fact.*   Of course, it being true that the alleged marriage ceremony was observed in the State of Georgia, it became necessary to the establishment of its validity to show what the law of that State is on this subject, and a strict compliance with every requisite in that law to establish a valid marriage.   The certificate of Michael Naughtin, with the letters "J. P. C. Co., Ga.," written after his name, that he had performed the ceremony, was introduced.   No explanation was in evidence as to the meaning to be attached to these letters, "J. P. C. Co., Ga." Of course, this was fatal in the absence of explanation.

*Second.* The appellant assails the conclusion of the Circuit Judge that the copy of record of marriage as introduced could not be relied upon as evidence of the marriage.   It is quite true that great weight, controlling weight, in fact, is accorded under the law to the records of judgment, &c., of other States by our courts.   Judgments must be of record. Hence the reason of the rule appertaining to them.   But other instruments entered of record in Georgia that the law does not require to be recorded, cannot have this dignity accorded them in our courts simply because they are *recorded* in Georgia.   Mr. Bishop's sections 990 and 991 says: "Section 990. Where, as in England, and probably in all of our States, the law requires

marriages to be registered, the record kept in pursuance of law, or the certificate of it, or the copy as just stated, is admissible in evidence to establish the fact of marriage. *But it proves nothing beyond what law requires to be entered in the register.* Section 991. This sort of record is not like judicial ones—conclusive— it is of no higher grade than the testimony of witnesses. Consequently it may be contradicted, or shown to be a forgery, or act of an unauthorized person. It is not in contemplation of law the best of evidence." As the Circuit Judge remarks, the provisions of the laws of Georgia touching the registry of marriage licenses, &c., only apply to *residents* of that State. *Section 1703 of Georgia Code.* But apart from all these circumstances, the Circuit Judge has decided as a fact that this ceremony of marriage was performed while the defendant *was under duress*, and that he had not ratified it since in any of the methods recognized in the law as sufficient for that purpose.

*Fourth.* The appellant insists that the weight of the evidence and the presumptions are against the conclusions reached by the Circuit Judge. We have read very attentively the testimony in this case. We cannot hold with the appellants as here suggested, but as intimated previously, we prefer that no specific reference to the testimony shall appear in our decision.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.